UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRENISE RATCLIFF                                        CIVIL ACTION
ON BEHALF OF T.W.

VERSUS                                                 NO. 16-7835

NANCY A. BERRYHILL, ACTING                             SECTION "B" (2)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION[1]

## FINDINGS AND RECOMMENDATION

Trenise Ratcliff, on behalf of her minor child, T.W., seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for childhood Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  42 U.S.C. § 402 et seq.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

Instead of filing a memorandum of facts and law as ordered, Record Doc. No. 14, plaintiff filed a motion for summary judgment.  Record Doc. No. 16.  The court treats her summary judgment motion as a memorandum of facts and law regarding her instant appeal from the Commissioner's final decision.  Defendant filed a timely reply memorandum of facts and law.  Record Doc. No. 22.

---

[1]Counsel for the Commissioner has advised the court that Nancy A. Berryhill is Acting Commissioner of the Social Security Administration as of January 23, 2017.  Pursuant to Fed. R. Civ. P. 25(d), Berryhill should be substituted for Carolyn W. Colvin as the defendant in this matter.  By reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action needs to be taken.

## I.    PROCEDURAL HISTORY

T.W. was thirteen years old when his mother applied for SSI on his behalf on October 2, 2013, alleging a disability onset date of August 15, 2006, due to a learning disability, depression and attention deficit hyperactivity disorder.  (Tr. 155-60, 173).  However, "[c]laimants applying to the SSI program may not receive payments for a period predating the month in which they apply for benefits."  Rosetti v. Shalala, 12 F.3d 1216, 1224 n.20 (3d Cir. 1993) (citing 20 C.F.R. § 416.335) (emphasis added); accord Brown v. Apfel, 192 F.3d 492, 495 n.1 (5th Cir. 1999); Wilson v. Colvin, No. 4:15-CV-711, 2017 WL 121056, at *1 n.2 (S.D. Tex. Jan. 11, 2017) (citing 20 C.F.R. § 416.335; Brown, 192 F.3d at 495 n.1).  "Thus, the month following an application . . . fixes the earliest date from which benefits can be paid."  Hector v. Barnhart, 337 F. Supp. 2d 905, 910 (S.D. Tex. 2004) (citing 20 C.F.R. § 416.335; Brown, 192 F.3d at 495 n.1).  Ratcliff must show that T.W. was disabled as of October 2, 2013, when she filed for benefits on T.W.'s behalf, through December 23, 2014, the date of the ALJ's decision.  Plaintiff's prior application for SSI was denied on September 28, 2012 and the denial became final when the Appeals Council denied review on September 23, 2013.  As the ALJ noted in the instant case, that prior decision was final, and the ALJ's discussion of evidence dated before the current SSI application date was "simply for historical perspective."  (Tr. 45).

After the application was denied, plaintiff filed a timely request for a hearing, which was conducted before an ALJ on August 29, 2014.  (Tr. 62-100).  The ALJ issued a

decision on December 23, 2014, finding that T.W. was not disabled.  (Tr. 45-58).  After

the Appeals Council denied plaintiff's request for review on March 28, 2016 (Tr. 1-4), the

decision of the ALJ became the final decision of the Commissioner for purposes of this

court's review.

II.    STATEMENT OF THE ISSUES ON APPEAL

Plaintiff contends that the Commissioner made the following errors:

A.    The ALJ erred by finding that T.W. does not meet Listing 112.11 for
attention deficit hyperactivity disorder and/or 112.04 for mood disorder.

B.    The ALJ erred by finding that T.W. does not functionally equal Listing
112.11 and/or 112.04.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issue on appeal:

A.    T.W. was an adolescent on his application date and the date of the hearing.

B.    He has severe impairments consisting of attention deficit disorder, borderline
intellectual functioning and depressive disorder.

C.    T.W.'s impairments do not meet or medically equal the criteria for any
impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically
including Listings 112.04 for mood disorders and 112.11 for attention deficit
hyperactivity disorder.

D.    T.W. does not have an impairment or combination of impairments that
functionally equals the severity of any Listing.

E.    His medically determinable impairments could reasonably be expected to
produce the alleged symptoms, but the statements concerning the intensity,
persistence and limiting effects of these symptoms are not entirely credible.

F.     T.W. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others.  He has no limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being.

G.     He has not been disabled since October 2, 2013, the date his application was filed, through the date of the ALJ's decision.

(Tr. 48-49, 51, 53-58).

IV.   <u>ANALYSIS</u>

A.     <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  <u>Waters v. Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002); <u>Loza v. Apfel</u>, 219 F.3d 378, 389 (5th Cir. 2000); <u>Spellman v. Shalala</u>, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Loza</u>, 219 F.3d at 393; <u>Spellman</u>, 1 F.3d at 360.  This court may not "reweigh the evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."  <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  <u>Id.</u>

4

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Harper v. Barnhart, 176 F. App'x 562, 565 (5th Cir. 2006); Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To qualify for SSI, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(D). In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("1996 Act"), which redefined the eligibility standard for children under the SSI disability determination process. This statute applies to all child disability applicants who filed claims on or after August 22, 1996, or whose cases were not finally adjudicated before that date. Id. § 211(d)(1)(A)(I).

According to the 1996 Act, "[a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 1382c(a)(3)(C)(i).

5

The Commissioner's final regulations in effect at the time of the ALJ's decision provide a three-step procedure for evaluating a child's claim of disability.  The first step is to determine whether the claimant is engaging or has engaged in substantial gainful activity.  If the answer is "yes," the claimant will be found not disabled.  If the answer is "no," the second step requires a determination whether the claimant has a medically determinable severe impairment.  If not, the claimant will be found not disabled.  If the claimant has such an impairment, the last step is to determine whether the impairment meets or equals in severity, either medically or functionally, an impairment listed in Appendix 1, Subpart P, Part 404 of the Commissioner's regulations (the "Listings").  If the claimant has such an impairment and the impairment meets the duration requirement, the claimant will be found disabled.  If not, the claimant will be found not disabled.  20 C.F.R. § 416.924 (2014).

The claimant has the burden of proof at all steps of the inquiry.  Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin., 783 F.3d 847, 850 (11th Cir. 2015); Taylor ex rel. D.M.T. v. Colvin, 555 F. App'x 643, 643-44 (8th Cir. 2014) (citing Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004)); Lopez v. Barnhart, 176 F. App'x 618, 619 (5th Cir. 2006); Pickett v. Colvin, No. 3:15CV700, 2017 WL 439978, at *2 (S.D. Miss. Jan. 6, 2017), report & recommendation adopted, 2017 WL 422812 (S.D. Miss. Jan. 31, 2017) (citing Whitehead v. Colvin, 820 F.3d 776, 781 (5th Cir. 2016)); Turner for R.B. v. Colvin, No.

H-13-3806, 2016 WL 4376515, at *3 (S.D. Tex. Aug. 16, 2016) (citing Johnson v. Bowen, 864 F.2d 340, 344 (5th Cir. 1988)).

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174; accord Perez v. Barnhart, 415 F.3d 457, 462 (5th Cir. 2005).

B.    Factual Background

T.W. testified that he is in the eighth grade in special education classes for most of the day and that this is the first time he has been in eighth grade. (Tr. 69-70). He stated that social studies is his favorite subject and that he received a grade around 80 in that subject the previous year. He said he has one friend at school and out of school and that he likes to shoot a basketball during his free time. (Tr. 70-71). He testified that he and his friend play lots of video games and that wrestling is his favorite video game.

T.W. said he takes medication daily and that it helps, but he could not explain what difference it makes. (Tr. 71-72). He stated that he receives counseling at River Parishes Clinic, which helps. He testified that he has problems at school because he does not listen and he thinks about something else when the teacher is speaking. (Tr. 72).

7

T.W. said he did not go to summer school, but helped his sister with his six- and seven-year old nephews during the past summer.  He stated that he watched the children sometimes when his sister was at work and sometimes when she was home.  (Tr. 73).

The claimant's mother, Trenise Ratcliff, testified that T.W. is 14 years old, but he "hide[s] his identity," meaning that he can be easily manipulated and controlled by boys his own age.  She stated that his friend, Brandon, lives nearby and is in his second year in school with T.W.  Ratcliff said that Brandon tells T.W. what to do and that her son does not stand up for himself, which makes her angry and scared because she does not want him to meet someone else who might harm him.  (Tr. 75-76).  She gave an example of Brandon having taken T.W. to the skating rink without either boy having asked her permission.  She said that the skating rink is dangerous because she has seen police officers there in the past when kids got in fights, and she does not want her son exposed to that.  She said she did not mind if the boys went to a movie.

Ratcliff testified that T.W. had to repeat kindergarten once, but has not repeated any other grade and is in special education classes.  (Tr. 76-77).  She said that her son started receiving counseling under his Individualized Education Plan once or twice a week at school during the end of his seventh grade year and that additional "stuff" had been added to his plan for the current year.  (Tr. 77).  She stated that T.W. used to have someone with him when he was taking a test, but now he takes tests by himself, loses focus without anyone to direct him, cannot answer the questions and runs out of time.  (Tr. 77-78).

8

Plaintiff said that T.W. shuts down and is quiet at home because he is depressed. She stated that her son is treated once a month at South Central Louisiana Mental Health in LaPlace, Louisiana by Dr. Hamm[2] and that the main problem with his treatment since kindergarten has been trying to find the right medicine. (Tr. 78-79). Ratcliff said that her insurance company would not pay for the medication that Dr. Hamm originally prescribed, which had helped T.W. with his depression and to stay focused. Plaintiff testified that her son's current medication only helps him stay focused. She said she wants to change insurance carriers to find one that will cover the original medication, but has not had time to do so because of her responsibilities as a single mother and homeowner. She stated that the original medicine really helped T.W. and he was eager to go to school when he took it. (Tr. 79).

Ratcliff testified that she always has to wake T.W. up in the morning and has to tell him to brush his teeth and find his belt, because she does not want him to be late for school. She stated that he goes to bed on time, but does not fall asleep for an hour. She said she does not think that T.W.'s current medication, Wellbutrin XL,[3] which he has been taking since October 2013, causes him to stay awake. She stated that she has told Dr.

---

[2]Although the transcript says "Dr. Hanna [PHONETIC]," the medical records show that T.W.'s treating psychiatrist is Barbara Hamm, M.D.

[3]Wellbutrin XL (generic name: bupropion hydrochloride) is an extended-release medicine used to treat depression. PDR+ (PDR, LLC 2017), http://www.pdr.net/pdr-consumer-monograph/wellbutrin-xl?druglabelid=1211&ConsumerId=5438 (visited Feb. 14, 2017).

Hamm about her son's sleep problem.  Plaintiff testified that a previous medication would not let T.W. eat or sleep, which was very scary.  She stated that Wellbutrin does nothing for her son's depression, but it is covered by insurance.  (Tr. 80-81).  She said she tries to wake T.W. in time to catch the bus, but he always wants to sleep a little longer and misses the bus, so she usually drives him to school.  (Tr. 82).

Ratcliff stated that T.W. has to be redirected all the time at school and at home, and that she always has to tell him to pick up his clothes, take out the garbage and do other chores.  She said that her son does nothing on his own.  She testified that T.W. has trouble understanding oral instructions and multi-step instructions at school and at home, and can only do one thing at a time.  (Tr. 83).  Plaintiff said that T.W. has difficulty working at a reasonable pace to finish assignments on time at school and at home.

Ratcliff stated that her son does not experience mood swings, but is always in the same quiet mood, holds things inside and does not open up and talk to her.  She said he occasionally gets overexcited about something like karate or a cartoon, and she has to tell him to calm down.  (Tr. 84).  She testified that she tells Dr. Hamm everything that she sees and knows about T.W.

Ratcliff stated that T.W. has a 25-year-old sister and a 21-year-old brother.  She said that the 21-year-old lives with her and T.W., and that T.W. is afraid of his brother, who tries to make T.W. tough and defend himself by "playing rough with him."  She testified that T.W. does not say anything and allows his brother to do whatever he wants, and that

she worries that T.W. does the same with other people. (Tr. 85). She said that T.W. was bullied at school and that she once went to school to speak up for him because he would not do it himself. Plaintiff testified that T.W. cried about being teased and called names at school and did not want to go back to school during the fifth grade. She said she gave custody of T.W. to her daughter so that T.W. could finish the rest of that school year at a different school in Jefferson Parish. (Tr. 86-87). She stated that things "brightened up a little bit" when T.W. returned to her custody, entered middle school, had no trouble with the children there and has "been fine in every sense" since attending that school. (Tr. 87).

Ratcliff testified that T.W. is socially immature and plays better with his six- and seven-year old nephews than with boys his own age. She said that boys his own age tell T.W. what to do and that he goes along with it without speaking up for himself. She stated that her son likes to teach his nephews how to be superheroes and do karate. She said that T.W. loves his nephews and would never do anything to hurt them. She thinks that T.W. should not be playing on their level, but should be on a fourteen-year-old level, although she worries that people his own age are going to control him. (Tr. 88). Plaintiff said that T.W. might sleep over sometimes at the home of Brandon, another friend or a cousin. She stated that she tries to keep T.W. around family and relatives his age who will not push him around or hurt him. (Tr. 89).

Ratcliff testified that, at the meeting for T.W.'s most recent Individualized Education Plan, she was told that T.W. would most likely not get a high school diploma

and would need "to take a trade," which she does not want for him. She hopes that he will be able to graduate with a diploma like her daughter and older son did. (Tr. 90).

Plaintiff stated that the first medicine that Dr. Hamm prescribed, Intuniv,[4] "was wonderful. It was great. It really helped [T.W.] a lot." (Tr. 90-91). She said that T.W. is still depressed despite taking Wellbutrin. She testified that T.W. wants to be smart at school and that her goal is to improve his grades, but she does not see that happening. (Tr. 91). Ratcliff said that her son gets good conduct grades, does not bother anyone or misbehave, but that his work is always incomplete because he has focus issues and does not finish in time. She said she has been trying to find the right medication for T.W. since kindergarten and that every drug that was tried before Intuniv made the boy unable to eat or sleep. (Tr. 92).

Plaintiff testified that she gave custody to her daughter only so that T.W. could go to school without crying. (Tr. 94). Ratcliff said her son receives counseling once or twice a week at school under his Individualized Education Plan. She said she has been on disability since 2002 when she was in a terrible accident, but that she helps out elderly people on the weekends. (Tr. 95).

Plaintiff stated that her older son is ready to move out of the house now that he is 21 years old, but that she asked him to stay and help with the mortgage until the end of the

---

[4]Intuniv (generic name: guanfacine) is an extended release medicine used to treat attention-deficit hyperactivity disorder. Id., http://www.pdr.net/pdr-consumer-monograph/intuniv?druglabelid=535&ConsumerId=5600 (visited Feb. 14, 2017).

year.  She said that her older son was on disability, which was taken away when he turned 21 and was no longer in school, but he can work with medication and is working two jobs until he goes to college.  (Tr. 96).  She stated that he helps her pay the mortgage.

Ratcliff testified that her daughter works overnight for the sheriff's department and that T.W. sometimes watched her daughter's children at her daughter's house during the summer.  Plaintiff stated that T.W. is always around little children.  She said she felt it was safer for him to guide the young children to do the right things, rather than for him to be around children his own age who help him do the wrong things.  (Tr. 97-98).  She stated that T.W. did not watch his nephews alone all day or at night, because her daughter's husband was in and out during the day and at home at night.  (Tr. 98).

Plaintiff testified that there are family histories of schizophrenia on her side and of violence on the side of T.W.'s father.  (Tr. 99).

C.    Medical Evidence

I have reviewed the medical and school records in evidence and the ALJ's summary of the evidence.  (Tr. 50-52).  I find the ALJ's summary of the medical and school evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

D.    Plaintiff's Appeal

1.    T.W.'s impairments do not meet Listing 112.04 or 112.11

At step three of the sequential evaluation, the ALJ found that T.W.'s attention deficit disorder, borderline intellectual functioning and depression do not meet, medically equal or functionally equal any listed impairment because his signs, symptoms and history of treatment are inconsistent with listing-level severity.  Ratcliff argues that the ALJ erred in finding that T.W.'s impairments do not <u>meet</u> Listing 112.11 for attention deficit hyperactivity disorder and/or Listing 112.04 for mood disorder.  Plaintiff contends that T.W.'s medical and school records and her own testimony demonstrate T.W.'s marked inattention, hyperactivity, impulsiveness and a learning disorder, which cause marked impairments in his social functioning and ability to maintain concentration, persistence and pace.

To meet Listing 112.11 for attention deficit hyperactivity disorder, as in effect at the time of the ALJ's decision,[5] T.W. must have (A) medically documented findings of marked inattention, marked impulsiveness <u>and</u> marked hyperactivity; <u>and</u> (B) <u>at least two</u> of the following:  marked impairment in age-appropriate cognitive/communicative function, documented by medical findings and including, if necessary, the results of appropriate standardized psychological tests; marked impairment in age-appropriate social functioning,

---

[5]The listings for mental disorders were recently revised, with an effective date of January 17, 2017.  Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5341732, at p. 1 (Sept. 26, 2016).

documented by history and medical findings; marked impairment in age-appropriate personal functioning, documented by history and medical findings; or marked difficulties in maintaining concentration, persistence or pace.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.11, 112.02(B)(2).  Similarly, Listing 112.04 for mood disorder in effect at the time of the ALJ's decision required (A) medically documented persistence of a major depressive syndrome, and (B) at least two of the same four marked impairments or difficulties in functioning as Listing 112.11 required.

Ratcliff has failed to carry her burden to show that T.W. meets either Listing 112.04 or 112.11.  The mere diagnoses of and treatment for a learning disability, attention deficit disorder and depressive disorder do not establish disability.  20 C.F.R. § 416.925(d); Bordelon v. Astrue, 281 F. App'x 418, 422 (5th Cir. 2008) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); McLendon v. Barnhart, 184 F. App'x 430, 431 (5th Cir. 2006); Harris v. Barnhart, 65 F. App'x 129, 132 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991).

Although Ratcliff asserts that T.W. has marked impairment in social functioning, she does not identify substantial evidence to support her argument.  Psychologist Julia Wood, Ph.D., reviewed T.W.'s records on January 8, 2014, and opined that he has less than marked limitations in interacting and relating with others, the functional domain similar to social functioning.  The ALJ accorded great weight to Dr. Wood's opinions because they are supported by a Social Security Administration form questionnaire completed by

T.W.'s teacher on November 22, 2013 and are consistent with the medical evidence as a whole, which showed that T.W. responded to treatment with medication. (Tr. 52). In the domain of interacting and relating with others, the teacher stated on his questionnaire that T.W. has "no problem" or "a slight problem" in twelve of thirteen sub-areas and "an obvious problem" in one area, and that no behavior modifications had been required. (Tr. 218). T.W. and his mother testified that he had at least one friend his age and others with whom he interacts. Ratcliff testified that T.W. gets along well with family members, especially his younger nephews. His school records confirm her testimony that T.W. had no issues with his behavior. Substantial evidence supports a finding that T.W. does not have a marked impairment in age-appropriate social functioning.

Ratcliff argues that T.W. has marked impairments or difficulties in only two areas: age-appropriate social functioning and maintaining concentration, persistence or pace. Plaintiff must show that her son has marked impairments in at least <u>two</u> areas of functioning to meet the paragraph B criteria of Listing 112.11 or 112.04. Her failure to provide substantial evidence that her son has marked impairments in age-appropriate social functioning means that she cannot demonstrate that he has such impairments in <u>two</u> areas and cannot meet either listing, so that the court need not address her argument that T.W. has marked difficulties in maintaining concentration, persistence or pace.

Nonetheless, Ratcliff also fails to identify substantial evidence that T.W. has marked difficulties in maintaining concentration, persistence or pace. Plaintiff cites comments by

T.W.'s teachers and herself in his Individualized Education Plan dated January 21, 2009, when T.W. was eight years old and in the second grade, that he needed frequent redirection and to improve his abilities to listen attentively, complete tasks and work independently. (Tr. 360, 362). These comments from more than four years before T.W.'s application date of October 2, 2013 do not substantially support that he had marked difficulties in maintaining concentration, persistence or pace during the relevant time period from October 2, 2013 through December 23, 2014, when he was 13 to 14 years old and in the seventh and eighth grades. On January 8, 2014, Dr. Wood assessed T.W. with less than marked limitations in the domain of attending and completing tasks, which is similar to maintaining concentration, persistence or pace. (Tr. 107). T.W.'s teacher noted on the form questionnaire dated November 22, 2013 that T.W. had "an obvious problem" in six of the thirteen task areas in the domain of attending and completing tasks, had "no problem" or "a slight" problem in the other seven areas, and often had to be redirected. (Tr. 217). The "obvious problem" choice on the questionnaire is number 3 on a scale from 1 ("no problem") to 5 ("a very serious problem"). The teacher did not characterize any of T.W.'s problems in attending and completing tasks as either "serious" (number 4) or "very serious" (number 5). The evidence therefore substantially supports the ALJ's conclusion that T.W. does not have marked difficulties in concentration, persistence and pace and does not meet Listing 112.11 or 112.04.

Accordingly, this assignment of error lacks merit.

17

2.    T.W.'s impairments do not functionally equal Listing 112.04 or 112.11

After finding that T.W. does not meet Listing 112.11 or 112.04, the ALJ found that T.W. does not <u>functionally</u> equal these listings.   An ALJ must assess functional equivalence in children by examining the child's limitations in six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being."   20 C.F.R. § 416.926a(b)(1).   An impairment or combination of impairments functionally equals a listed impairment if it results in marked limitations in <u>two</u> domains or an extreme limitation in one domain.   <u>Id.</u> § 416.926a(a).

> (i) [The Commissioner] will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. . . .   "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."   It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
> . . . .
> (iii) [The Commissioner] will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, <u>and</u> your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(i), (iii) (emphasis added).

Ratcliff argues that the ALJ erred in finding that T.W. has less than marked limitations in the domains of acquiring and using information and attending and

completing tasks.[6]  Specifically, plaintiff contends that the ALJ failed to consider T.W.'s objective standardized test scores along with his daily functioning.  Plaintiff's argument is not persuasive.

First, the achievement test scores and comments by T.W.'s teachers that Ratcliff cites were obtained in the fall of 2008 and January 2009 when T.W. was eight years old and in the second grade.  (Tr. 365-67).  The tests were designed "to assess [his] <u>current</u> level of educational skills." (Tr. 366) (emphasis added).  Test results and educational assessments obtained more than four years <u>before</u> T.W.'s application date of October 2, 2013 do <u>not</u> substantially support a finding that he had marked limitations during the relevant time period from October 2, 2013 through December 23, 2014.  As the ALJ appropriately stated, she considered evidence dated before the SSI application date "simply for historical perspective." (Tr. 45).  She was not required to discuss or rely on irrelevant records, particularly when more recent, relevant evidence was in the record.

Second, the relevant evidence as a whole substantially supports the ALJ's findings that T.W. does not have marked limitations in the domains of acquiring and using information and attending and completing tasks and thus does not functionally equal Listing 112.11 or 112.04.  The ALJ relied on the November 22, 2013 teacher questionnaire; T.W.'s 2012-2013 Individualized Education Plan; his grades from the

---

[6]T.W. does <u>not</u> challenge the ALJ's conclusions that he has less than marked limitations in the domain of interacting and relating with others and has no limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being.

relevant time period; and Dr. Wood's opinions. The ALJ also stated that the medical evidence was inconsistent with any impairment of listing-level severity and that Ratcliff's allegations of more disabling impairments were not entirely credible. As previously discussed, T.W.'s teacher noted on the questionnaire that T.W. had "an obvious problem" in six of the thirteen task areas in the domain of attending and completing tasks, had "no problem" or "a slight" problem in the other seven areas, and often had to be redirected. (Tr. 217). In the domain of acquiring and using information, the teacher indicated that T.W. had an "obvious problem" and daily difficulty in nine out of ten task areas and a "slight problem" in the remaining area. (Tr. 216). Although T.W. had "obvious" problems in several task areas in two domains, the teacher located those problems at "obvious" or Number 3 in the middle of a five-point scale, not at the "serious" to "very serious" level where they would be considered "marked" for listing purposes. The teacher questionnaire is substantial evidence supporting the ALJ's findings that T.W. had less than marked limitations in the two domains.

In addition, the medical records from plaintiff's treating psychiatrist, Dr. Hamm, during the relevant time period show that T.W. was doing better once he resumed taking medication. His mental status examinations were generally normal, except that he had fair intellect (which is reflected in the ALJ's finding that he has a severe impairment of borderline intellectual functioning) and limited insight and judgment. (Tr. 388-92, 425, 427, 430). On December 3, 2013, Dr. Hamm prescribed Wellbutrin to target both T.W.'s

mood and inattentiveness, after Ratcliff's insurance declined to pay for Intuniv, which had reportedly worked very well. (Tr. 391). Dr. Hamm continued to prescribe Wellbutrin and to note some improvement through September 10, 2014. (Tr. 425, 427, 430). A medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling. Muckelroy v. Astrue, 277 F. App'x 510, 511-12 (5th Cir. 2008) (citing Burnside ex rel. Burnside v. Bowen, 845 F.2d 587, 592 (5th Cir. 1988), abrogated on other grounds by Sullivan v. Zebley, 493 U.S. 521, 527 (1990)); Hebert v. Barnhart, 197 F. App'x 320, 323 (5th Cir. 2006) (citing Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988)); Leblanc v. Chater, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987).

Ratcliff correctly points out that the ALJ erred in stating that T.W. had achieved above-average final grades in all his seventh grade subjects, except for a C in science. (Tr. 54). The above-average grades were actually for "Conduct" in all classes. (Tr. 293, last column). Although plaintiff in her memorandum cites grades of F in writing and science, those interim grades occurred in the third quarter of T.W.'s seventh grade year. (Tr. 233). His final report cards for the sixth and seventh grades indicate that, from the 2012-2013 year to the 2013-2014 year, he maintained final grades of C in math, reading and social studies, maintained a D in science and fell from a B to a D in writing. (Tr. 293, 296). T.W. received accommodations through special education services and an Individualized Education Plan. (Tr. 53). However, the Individualized Education Plan only called for T.W.

to be in special education classes for 150 minutes per day, five times per week, meaning that he spent 5 1/2 hours per day in a regular classroom setting. (Tr. 356). Although T.W. was working at the fourth grade level in reading and math, he was promoted to eighth grade because he had grade level mastery in his other four subjects. (Tr. 295).

The ALJ gave great weight to the opinions of Dr. Wood, who reviewed T.W.'s records on January 8, 2014. Dr. Wood opined that T.W. had less than marked limitations in the two domains of acquiring and using information and attending and completing tasks. (Tr. 107). "State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i). "Although ALJs 'are not bound by any findings made by State agency medical or psychological consultants,' they must consider such findings as opinion evidence." Alejandro v. Barnhart, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (quoting 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)); accord Butler v. Barnhart, 99 F. App'x 559, 560 (5th Cir. 2004). It is well established that the ALJ may rely on the non-examining expert's function-by-function analysis of the impact of claimant's impairments on his ability to perform various tasks. Beck v. Barnhart, 205 F. App'x 207, 213-14 (5th Cir. 2006) (citing Onishea v. Barnhart, 116 F. App'x 1, 2 (5th Cir. 2004); Myers v. Apfel, 238 F.3d 617, 620-21 (5th Cir. 2001); SSR 96-8p, 1996 WL 374184); accord Weatherspoon v. Astrue, No.

12-2998, 2013 WL 5507293, at *5 (E.D. La. Sept. 30, 2013) (citing Onishea, 116 F. App'x

at 2). No medical evidence contradicts Dr. Wood's assessment.

As the above summary indicates, the medical and school records generally reflect

only mild to moderate symptoms of attention deficit disorder and depressive disorder, with

improvements in T.W.'s condition with medication. Although there are indications of

setbacks at times, it is the ALJ's province to weigh the evidence and resolve any conflicts.

Newton, 209 F.3d at 452; Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008)

(citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d

901, 905 (5th Cir. 1990)). Substantial evidence supports the ALJ's findings that T.W. has

less than marked limitations in the domains of acquiring and using information and

attending and completing tasks.

Accordingly, this assignment of error lacks merit.

## RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's appeal be

denied and her complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within fourteen (14)

days after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>,

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[7]

New Orleans, Louisiana, this ____23rd____ day of February, 2017.

_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[7]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

24